UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA | : |
| | : |
| V. | :   05-CR-246(RMC) |
| | : |
| OSCAR AGUILAR-GOMEZ | : |

DEFENDANT'S MEMORANDUM IN SUPPORT OF SENTENCE

Pursuant to the provisions of F. R. Cr. P. 49 and L. Cr. R. 49.1, defendant Oscar Aguilar-Gomez, by his attorney, Gary M. Sidell, hereby submits his memorandum in support of sentence. Mr. Aguilar-Gomez is currently scheduled to be sentenced on Wednesday, October 11, 2006, at 9:30 a.m.  At his sentencing, Mr. Aguilar-Gomez expects to request that this Honorable Court impose, as its sentence, a term of "time served" for the 436 days, or approximately 14 months (August 2, 2005 to October 11, 2006), that he will have been in custody on this case at that time, on the sole count involved in his plea.  This memorandum will present Mr. Aguilar-Gomez's bases for that request.

1.  On August 2, 2005, Mr. Aguilar-Gomez was arrested at his residence, 4910 Kansas Avenue, NW, in Washington, D.C.  No arrest warrant for Mr. Aguilar-Gomez, nor search warrant for his residence, was extant at that time.  Mr. Aguilar-Gomez has remained in custody since that time, having waived his rights to contest deportation on August 2, 2005, by executing a stipulated order of deportation, as requested by federal authorities.  Hence, by the time of his

October 11, 2006 sentencing, he will have been held in custody for a total of 436 days, continuously.

 2. On July 18, 2006, Mr. Aguilar-Gomez was the first defendant in this seven co-defendant case to enter his guilty plea to a single count of conspiracy to possess fraudulent identification documents, in violation of both 18 U.S.C. § 371 and 1546(a), count one of the superseding indictment. As of the date of Mr. Aguilar-Gomez's sentencing, all other defendants have entered their own guilty pleas. See, PSI @ page 4, § 6. Moreover, three (3)(Contreras-Macedas, Mora-Gil and Francisco) of the remaining defendants have entered pleas to aggravated identity theft requiring imposition of a statutory mandatory two (2) year sentence. See, Docket Nos. 112 (Contreras-Macedas), 110 (Mora-Gil) and 116 (Francisco). Furthermore, another co-defendant (Lopez-Vargas) has entered a plea to the conspiracy charge, as well as a second offense of illegal re-entry to the United States. See, Docket No. 84. Finally, the remaining two (2) defendants (Hernandez-Carlon and Gonzalez-Olvera) have agreed, as part of their respective guilty pleas, to involvement with more than 100 false identification documents. See, Docket Nos. 95 @ page 3, ¶ 7, and 100 @ page 3, ¶ 7. In contrast, Mr. Aguilar-Gomez has not agreed to involvement with any particular number of false documents in this case, but expects to suggest to this Honorable Court at sentencing that his participation satisfies the application notes for a "minor" participant, if not a "minimal" one. See, USSG § 3B1.2, Application Notes 3.(C) 4, 5. As a result, Mr. Aguilar-Gomez anticipates requesting that this Honorable Court find as a fact that his role was one of, at least, "minor" participation, as defined by the USSG, Id.

 3. Imposition of a criminal sentence must consider a variety of factors, detailed in 18 U.S.C. §3553, in order to fulfill the following four (4) traditional objectives:

  (A) imposition of just punishment for committing the offense;

      (B)   provision of deterrence to criminal conduct;

      (C)   protection of the public from further crimes by the defendant; and

      (D)   provision of needed educational or vocational training, medical care or other corrective treatment to the defendant. 18 U.S.C. §3553(a) (2).

    4. In achieving the four (4) objectives listed above, various considerations of both the nature and circumstances of the offense, as well as the characteristics of the defendant must be evaluated. Mr. Aguilar-Gomez submits that of particular note in this case are two (2) principal considerations: first, the avoidance of unwarranted sentence disparities among defendants with similar records found guilty of similar conduct, 18 U.S.C. §3553(a)(6); (b)(1), and, second, the loss of caretaking or financial support to a defendant's family substantially exceeds the harm ordinarily expected with a term of incarceration. USSG §5H1.6, Family Ties and Responsibilities (Policy Statement), Application note: 1.(B)(i)- (iv)(2005). Sentencing Commission policy statements are one of the various factors required to be considered in imposition of individual sentences. See, 18 U.S.C. §3553 (a)(5)(A).

    5. While the Sentencing Guidelines are no longer mandatory, they do provide guidance for imposition of criminal sentences, United States v. Booker, ___U.S.____, 125 S. Ct. 738, 749-750(2005), so there is some uniformity between defendants and different jurisdictions with the sentence imposed for a given offense. Indeed, Mr. Aguilar-Gomez's written plea agreement notifies him that ". . . the determination of the defendant's sentence will be made solely by the Court . . . ." See, July 12, 2006 plea agreement @ page 2, ¶ 7, Docket No. 81. Moreover, at the July 18, 2006 hearing in this case, this Honorable Court informed the parties, and particularly Mr. Aguilar-Gomez, that the Court is solely responsible for the determination of the sentence imposed.

6. As reflected in Mr. Aguilar-Gomez's Presentence Investigation Report, @ page 7, ¶ 29-30, Mr. Aguilar-Gomez has no prior criminal conduct and, as a result, is placed in the lowest possible Criminal History category (I) in the Sentencing Guidelines. Moreover, the offense level for Mr. Aguilar-Gomez of 11 (USSG § 2L2.1(a), after the subtraction for his acceptance of responsibility (2 points)(USSG § 3E1.1(a)) and a "minor" role (2 points)(USSG § 3B1.2)(b), is 7, with a resulting guideline range of 0 to 6 months in custody for this offense[1].

7. By the express terms of all other co-defendants' plea agreements, Mr. Aguilar-Gomez is the least culpable in this entire affair. Three (3) co-defendants entered guilty pleas to at least aggravated identity theft (Contreras-Macedas, Mora-Gil and Francisco). As such, they are subject to a statutory mandatory sentence of two (2) years. Moreover, two (2) co-defendants entered pleas to two (2) offenses (Francisco, aggravated identity theft and possession of a firearm by an illegal alien and Lopez-Vargas, conspiracy to possess fraudulent documents and illegal re-entry), thereby facing exposure up to four years (Francisco, with applicable Guideline range) and a maximum of up to seven (7) years (Lopez-Vargas, with statutory exposure). Finally, the remaining two (2) defendants (Hernandez-Carlon and Gonzalez-Olvera) face exposure to a Guideline range of 18 to 24 months.[2] In short, Mr. Aguilar-Gomez submits that the prosecution itself has conceded that his role here is as the most minor participant by virtue of plea offers

---

[1] Defendant assumes for purposes of this Memorandum that (1) a <u>factual</u> determination is made of his involvement with less than six (6) documents, thereby not adding any offense severity points to the base offense level of 11 and (2) that a second factual determination is made that Mr. Aguilar-Gomez, compared with the remaining six (6) co-defendants, was a "minor" participant, as that term is defined by the Application Notes to this Guideline section, § 3B1.2, 3.(C)4, e.g., "less culpable than most other participants. . . ."

[2] In the revised Presentence Investigation report (October 2, 2006), despite their acknowledgement of involvement with more than 100 false documents, both co-defendants Hernandez-Carlon and Gonzalez-Olvera have Guideline exposure of only 18-24 months (offense severity level 15) as a result of their respective plea agreements. See, PSI @ page 5, ¶ 13; Docket No. 95 @ page 3, ¶ 7 (Hernandez-Carlon) and Docket No. 100 @ page 3, ¶ 7 (Gonzalez-Olvera)(by agreement, the defendants are ". . . entitled to a minor role adjustment of a 2 level decrease of [their] guideline range. . . ."). Ironically, because Mr. Aguilar-Gomez was not offered, and did not agree to involvement with more than 100 false documents, but to have that fact finding made at sentencing, the PSI suggests that he receive a ***more severe sentence*** than those co-defendants who have acknowledged, later than he, their far greater participation. Mr. Aguilar-Gomez submits that such a conclusion would present an inequitable sentence for him.

extended to all others.  In further support of this position, Mr. Aguilar-Gomez submits that such a minimal role is consistent with his recent arrival in this jurisdiction (late June, 2005) compared with the co-defendants and with his relatively more modest involvement during that time period until his August 2, 2005 arrest, i.e., four to five weeks.  Indeed, during the course of testimony at a motions hearing, a prosecution witness testified that this "conspiracy" had continued since 1998 in the same two (2) block area of 1600-1800 Columbia Road.  See, February 6, 2006 hearing transcript, witness Mark Leeper, @ pages 10, 12.  Mr. Aguilar-Gomez only arrived in the metropolitan area in late June, 2005, having entered this country shortly before from Mexico by paying a smuggler to aid his entry through San Ysidro, CA.  Indeed, Mr. Aguilar-Gomez mainly worked for some entrepreneurial self-employed Guatemalans who cut trees in this area, while he was involved with false immigration documents on a more "part-time" basis.

8. Mr. Aguilar-Gomez submits that his factual involvement with these activities was far more limited in duration and in scope than all other co-defendants.  As such, his position is one where he urges this Honorable Court to impose a sentence of "time served."  Such a sentence far exceeds what any applicable guideline range otherwise suggests.  Indeed, as a practical matter, assuming a sentence of "time served" is imposed on October 11, 2006, Mr. Aguilar-Gomez will remain in the custody of the United States for an indefinite additional time until he may be deported to Mexico, notwithstanding his voluntary stipulation of deportation that he executed on August 2, 2005, and which was endorsed by an administrative law judge on August 15, 2005.  See, A-G Exhibit 5, February 13, 2006 hearing transcript @ pages 48 (identified), 58 (admitted).  Mr. Aguilar-Gomez suggests that further additional months of being incarcerated, whether nominally in a criminal case or in an "administrative" one, produce the identical net result to him: an additional punishment while precluding his return to Mexico, prospective

employment and income available for his children, while costing United States taxpayers significant additional funds for his continued housing, i.e., $1,952.66 per month. See, PSI @ page 12, ¶ 68. Any further time spent incarcerated will simply exacerbate the sentence disparity between Mr. Aguilar-Gomez's role in these events and the actions of other co-defendants.

    9. In further support of his request for a sentence of "time served," Mr. Aguilar-Gomez informs the Court that he was the main source of support for his two (2) minor daughters who live in Mexico. As noted in the Presentence Investigation Report, Mr. Aguilar-Gomez's children live with his former wife, but he does not know of her ability to provide for their financial support. Prior to his incarceration, Mr. Aguilar-Gomez satisfied his divorce decree by providing 30% of his earnings to his former wife for child support and, indeed, provided additional amounts since he viewed the required 30% as inadequate. See, PSI @ page 8, § 35 and page 10, § 47; and Exhibit I, attached copy of Mexican divorce decree with relevant summary English translation; Exhibit II, attached statement from Felipe De Jesus Garcia Galicia, defendant's former employer, dated July 11, 2006, and English translation; Exhibit III, attached accounting of child support payments received by his former wife, Soledad Galvan-Rios, and English translation. At current exchange rates, Mr. Aguilar-Gomez's child support payments convert to approximately $27.00 per week, which he previously viewed as inadequate. As such, Mr. Aguilar-Gomez submits that a sentence of "time served" will satisfy the four (4) requirements delineated for his loss of caretaking or financial support by allowing him to resume gainful employment. See, USSG § 5H1.6, Application Note 1. (B)(i)-(iv)(2005).

    10. Finally, if it is assumed that Mr. Aguilar-Gomez is placed in a Guidelines category of offense level 14 or higher (15-21 months, or more), he submits that a downward departure to "time served" would be consistent with the more severe sentence to which Mr. Aguilar-Gomez,

as a deportable alien, will be subjected.  Because of his status, Mr. Aguilar-Gomez will be ineligible for the benefits the Bureau of Prisons would otherwise provide to a U.S. citizen, or non-deportable alien.  18 U.S.C. § 3624(c).  For instance, Mr. Aguilar-Gomez will be ineligible for any home confinement immediately prior to the conclusion of his incarceration, for assignment to any community corrections center or to a minimum security prison, since all require those facilities to be located in the United States.  The purpose, of course, is to ease the reentry into the defendant's *United States' community* toward the end of his sentence.  See, United States v. Smith, 307 U.S. App. D.C. 199, ___, 27 F.3d 649, 650-652 and fn2 (D.C. Cir. 1994).  Certainly, if it was appropriate to consider a downward departure to avoid the adverse consequences of imposing a sentence on Mr. Smith, as a deportable alien, with a conviction for possession with intent to distribute more than five (5) grams of cocaine base, an offense that, it is submitted, has a much more wide-ranging and immediate adverse consequence to the public than this case, it is at least as appropriate to consider Mr. Aguilar-Gomez's downward departure sentencing proposal here.  Moreover, Smith, supra, was a pre-Booker decision when the Sentencing Guidelines were mandatory, unlike their current status as simply advisory.

      11.   When considering the proposed sentence for Mr. Aguilar-Gomez with the four (4) considerations noted above in paragraph 3, we submit that a sentence of more than the fourteen (14) months served already will clearly provide adequate punishment to Mr. Aguilar-Gomez, while similarly informing him of the serious wrongfulness of attempting entry to this country in the manner he used, even if it was to obtain a greater income here than he was earning in Mexico.  Hence, prospective protection of the public and deterrence of future crime by Mr. Aguilar-Gomez would seem to be satisfied.  Indeed, Mr. Aguilar-Gomez, as a result of this conviction, is subject to more severe penalties should he attempt to improperly gain re-entry to

the United States again as he is aware of Mr. Lopez-Vargas' case with its additional exposure. (Up to an additional two years in prison for illegal re-entry).  See, 8 U.S.C. § 1326.  Moreover, as a direct consequence of this conviction, Mr. Aguilar-Gomez is barred from legal entry into this country for many years.   8 U.S.C. § 1182(a)(2)(B)(potential permanent bar to readmission); 8 U.S.C. § (a)(9)(A)(i), (ii)(minimum of  ten (10) years before reentry permitted, if not permanent ban for conviction of "aggravated felony," as defined by Immigration Act).   The final consideration of provision of educational, medical or other treatment or training to Mr. Aguilar-Gomez would appear to be less important for a deportable alien than one who would be released to a community in this country.   Alternatively, Mr. Aguilar-Gomez has no current medical issues.  He has already received an amount of formal education in English as a second language, and participated in other programs, at the Correctional Treatment Facility which likely will have less value upon his return to Mexico than if he were permitted to remain in this country.  See, Exhibit IV, A-D, attached, CTF issued certificates and July 21, 2006 correspondence from Nilfa M. Guzman.

   Based on the foregoing, in addition to any further information provided at the October 11, 2006 sentencing hearing, Mr. Aguilar-Gomez urges this Honorable Court to impose as its sentence imprisonment for the time that Mr. Aguilar-Gomez has served already in custody, as a downward departure from any Guidelines category in excess of 14 months based upon (1) a comparison with the six (6) sentences for the remaining co-defendants in this case, (2) the loss of Mr. Aguilar-Gomez's caretaking and financial support to his two minor children from continued incarceration and (3) the deprivation of eligibility to complete any sentence of incarceration in a

less restrictive setting such as a community corrections center, home detention or the like due to his deportable alien status.

                              Respectfully submitted,

                              _____\s_____
                              Gary M. Sidell
                              1101 Connecticut Ave., NW
                              Suite 1000
                              Washington, D.C. 20036
                              D.C. Bar No. 961847
                              202-783-0060
                              Email: suitcase@erols.com
                              Attorney for Oscar Aguilar-Gomez

## CERTIFICATE OF SERVICE

      I hereby certify that I have caused this pleading to be filed electronically by ECF to all parties to this case this 5th day of October, 2006.

                              _____\s_____
                              Gary M. Sidell