IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | CRIMINAL NO. : 05-246-07 (RMC) |
| : | |
| v. : | |
| : | |
| OSCAR AGUILAR-GOMEZ, : | |
| : | |
| Defendant. : | |
| : | |

**GOVERNMENT'S MEMORANDUM IN AID OF SENTENCING**

The United States, by and through its attorney, the United States Attorney for the District of Columbia, respectfully files this memorandum to aid the Court in its sentencing decision. For the reasons explained below, the government urges the Court to impose a sentence that falls within a Sentencing Guideline range of 27 to 33 months. The government's reasoning for this request is explained below.

On July 18, 2006, the defendant pled guilty to violating 18 U.S.C. § 371, Conspiracy to Commit an Offense Against the United States, that is, Possession of Fraudulent Documents Prescribed for Authorized Stay or Employment in the United States. The Presentence Report indicates that the appropriate sentencing range under the Sentencing Guidelines is 24-30 months. See Aguilar-Gomez Presentence Report, Paragraph 56, p. 11. The defendant has requested a sentence of time served, which would equal a sentence of approximately 14 months. However, the government believes that the appropriate sentencing range should be 27-33 months.

The government agrees with the calculations in Paragraphs 18 through 27, which lead to the 24-30 month sentencing range, except for Paragraph 26, regarding Acceptance of Responsibility. In light of the defendant's apparent unwillingness to accept full responsibility for his illegal conduct

– as evidenced by his assumption that he is responsible for possessing and selling only 5 illegal identity documents during the course of the conspiracy -- the government is not inclined to move that he be granted the third point for Acceptance of Responsibility, in accordance with §3E1.1(b).[1] A two point, rather than three point, reduction for Acceptance of Responsibility will place the defendant in the 27-33 month sentencing range (Total Offense Level 18; Criminal History Category 1).

The government agrees with Paragraph 20 of the Presentence Report that the defendant should be held accountable for 100 or more documents, as a Specific Offense Characteristic under §2L2.1(2)(C). There is ample support for this contention. First, the defendant pled guilty to conspiring with other illegal document sellers. Therefore, he should be held accountable not only for his own illegal activity, but also for the "reasonably foreseeable" illegal activity that his co-conspirators engaged in. As the defendant notes, two of his co-conspirators each admitted that they were responsible for 100 or more documents, and that criminal activity should be attributed to the defendant. Moreover, there were additional co-defendants, including Peles Francisco, who had more than 200 illegal identity documents in his apartment when he was arrested on August 2, 2005, the same date as the defendant's arrest.

In the Factual Proffer in Support of Guilty Plea, the defendant admitted that he was one member of an illegal document selling organization that "included, among others not named here,

---

[1] In footnote one of his Sentencing Memorandum, the defendant assumes the Court will make a factual determination that he was involved with fewer than six documents during the conspiracy. In footnote two, the defendant notes that at least two of his co-defendants have acknowledged that they were involved with 100 or more false documents. While it is true that the defendant did not agree that he was involved with 100 or more false documents, the undersigned AUSA did make that proposal to defense counsel during a discussion after reviewing the defendant's original presentence report. That proposal was declined. Defense counsel preferred to submit to the Court the issues of how many documents for which the defendant should be held accountable, and his role in the offense.

Raymundo Lopez-Vargas, who is also called "Floy" and "Floyd;" Pedro Hernandez-Carlon, who is also called "Perico;" and Remgio Gonzalez-Olvera, who is also called "Cachando." Factual Proffer, p. 2. The defendant acknowledged that he sold illegal documents, and, in fact, that his fingerprints were found on "a sheet of blank illegal resident alien cards seized from the document mill at 526 Tuckerman St., NW, Washington, D.C." Factual Proffer, p. 3. That sheet consisted of the 5 illegal identity documents the defendant claims are the only documents for which he should be held accountable.

However, the defendant also should be held accountable for each of the 83 illegal identity documents that were recovered in the document mill because that is where the co-conspirators made the illegal identity documents that the defendant and his co-conspirators sold to their customers. The defendant's connection to the document mill is strong since his fingerprints were found inside the document mill on the blank sheet of illegal identity documents, as well as on a white film processing envelope.

The defendant gave a sworn statement (see Attachment A) to a Spanish speaking agent from U.S. Immigration and Customs Enforcement, which was recorded in English, in which the defendant denied knowing how his fingerprints got on items recovered from the document mill.[2] But the defendant certainly had an incentive to minimize his involvement in illegal activity and his answers to many of the questions leave the impression that he was not telling the complete truth. In fact, two of the defendant's co-conspirators suggested that the defendant had actually lived at the document mill at one point in time, and probably was involved in making the documents – despite the

---

[2] Agent Heath Simon asked the defendant: "Why do you think your fingerprints were found on documents that were in the mill?" He answered: "I have no idea, that is what I want to find out." Statement, p. 3.

defendant's claims that he never helped make the illegal documents.[3]  Of course, the defendant's fingerprints on a blank sheet of illegal resident alien cards – which are the very items used to make the illegal cards -- is strong evidence that defendant did in fact help make the illegal cards.

Standing by itself, the fingerprint evidence is strong evidence that the defendant most likely helped make the documents at some point in time.  Individuals who were minor participants in the conspiracy would not have been given access to the blank sheets of card stock used to make the documents or the apartment where the documents were made.  Moreover, the statements by Lopez-Vargas and Hernandez-Carlon, though reluctant, help corroborate this defendant's role as someone who once helped to manufacture the documents.   Thus, Aguilar-Gomez should be denied a role reduction as a minor participant.

The defendant claimed in his statement that he participated in the conspiracy for less than one month, and that he "sold about five documents per week, more or less." Aguilar-Gomez Statement, p. 3.  In his Sentencing Memorandum, the defendant claims that he was involved in the conspiracy

---

[3]Raymundo Lopez-Vargas, one of the co-conspirators whom the defendant admitted knowing, lived in the document mill.  On August 23, 2005, Lopez-Vargas gave a sworn statement to Agent Simon.  During the interview, Agent Simon asked Lopez-Vargas: "Who is the person that made the false documents for your group?"  Lopez-Vargas responded, "I don't know.  However, Perico [that is, Pedro Hernandez-Carlon] and Manuel [that is, Oscar Aguilar-Gomez] lived in the house where I was arrested.  They might be the ones who made the documents." See Attachment B, redacted statement of Raymundo Lopez-Vargas, p. 3.

On September 1, 2005, Pedro Hernandez-Carlon gave a sworn statement to Agent Simon.  Hernandez-Carlon explained that he was the "runner" who sometimes gave orders for illegal identity documents to Aguilar-Gomez at 526 Tuckerman St.  Hernandez-Carlon said: "I picked up the orders and then drove to 526 Tuckerman and gave the orders to either Floy [that is, Raymundo Lopez-Vargas] or Don Manuel [that is, Oscar Aguilar-Gomez]." See Attachment C, redacted statement of Pedro Hernandez-Carlon, p. 3.  The agent asked him, "Who is the person that made the false documents for your group?"  Hernandez-Carlon said, "I don't know, but I think Floy and Don Manuel were making the false documents in Floy's room at 526 Tuckerman." Id.

as of late June, 2005, four to five weeks before his arrest. Aguilar-Gomez Sentencing Memorandum, p. 5. However, in his Factual Proffer in Support of Guilty Plea, the defendant admitted that he participated in the conspiracy "between on or about February 1, 2005 through on or about August 2, 2005." Assuming the defendant sold only five documents for one month rather than the seven months he agreed to in the Factual Proffer, the defendant still would have sold 20 illegal identity documents by himself. That 20 documents plus the 83 illegal identity documents recovered from the document mill equals 103 illegal documents, which is sufficient to warrant a 9 level increase as a Specific Offense Characteristic.

The government, of course, contends that the defendant should be held accountable for the many illegal identity documents his co-conspirators made in the document mill and sold on Columbia Road during the period he participated in the conspiracy. That number necessarily exceeds more than 100 documents. If the defendant sold only 20 documents per month for the seven months he agreed to having participated in the conspiracy, he would have sold 140 illegal identity documents by himself. Accordingly, the Court should attribute more than 100 illegal identity documents to the defendant. In short, the defendant should be held accountable for all of the documents that were made at the mill during his participation in the conspiracy, which amounts to more than 100 documents. At a minimum, the defendant should be held accountable for 103 documents, consisting of the 83 documents that were recovered from the document mill and the 20 documents he sold by himself during his participation in the conspiracy.

A sentence in the range of 27-33 months is appropriate because the manufacture and sale of illegal identity documents is not an insignificant criminal offense. Selling fake identification documents to individuals can lead to other criminal activity. For example, many people who buy the documents are present in the U.S. illegally, and may use the documents to help obtain employment to which they are not entitled under U.S. law. Many of the fake identity cards contain real social security numbers or other identifying numbers that belong to U.S. citizens, whose identifying numbers may then be used to obtain financial credit that may eventually wreak havoc in the unsuspecting citizens' lives. Identity fraud and its criminal and financial consequences have become major problems in this society.

Selling fake identity documents on Columbia Road has become a major criminal industry, and a lucrative one. That is apparent because individuals, particularly those who are present in the U.S. illegally, continue to flock to that area to sell illegal identity documents. The fact that the vendors seek to send much of their earnings overseas to their families does not justify their presence here or their illegal methods of earning a living. A sentence that appears to be a slap on the wrist will not deter this defendant or others from selling illegal identity documents. In his statement (page 2), the defendant admitted that he has entered the U.S. illegally on two occasions. His sentence should be severe enough to discourage him from returning again in violation of the law. Thus, a fairly lengthy sentence will protect the public from his return and continued criminal activity in this country.

WHEREFORE, the government requests that the Court impose a sentence within the sentencing range of 27-33 months.

                                        Respectfully submitted,

                                        JEFFREY A. TAYLOR
                                        United States Attorney
                                        D.C. Bar No.498 610

By: _____
        FREDERICK W. YETTE
        Assistant United States Attorney
        D.C. Bar No. 385 391
        Federal Major Crimes Section
        555 4th Street, N.W.
        Washington, D.C.  20530
        (202) 353-1666
        Frederick.Yette@usdoj.gov